Charles M. Lizza
William C. Baton
Sarah A. Sullivan
**SAUL EWING ARNSTEIN & LEHR LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102
wbaton@saul.com

*Attorneys for Plaintiff*
*Supernus Pharmaceuticals, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **SUPERNUS PHARMACEUTICALS, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **RICONPHARMA LLC and INGENUS PHARMACEUTICALS, LLC,** <br><br> **Defendants.** | **C.A. No. 21-12133 (FLW)(TJB)** <br><br><br> **(Filed Electronically)** |

**SUPERNUS'S OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................iii

GLOSSARY .............................................................................................................v

DISPUTED TERMS AND COMPETING CONSTRUCTIONS................................vi

I.      INTRODUCTION .............................................................................. 1

II.     BACKGROUND ................................................................................ 2

III.    GENERAL CLAIM CONSTRUCTION PRINCIPLES.................................... 4

IV.     LEGAL ANALYSIS............................................................................ 5

        A.      "A pharmaceutical formulation … comprising a homogeneous
                matrix comprising" ............................................................... 5

                i.      The Claims Themselves Use the Term of Art "Comprising"
                        to Describe Formulations that Must Have at Least One
                        Homogeneous Matrix, But May Also Include Other Layers,
                        Constituents, Components, or Structures.................................... 6

                ii.     Ricon's Proposed Exclusions and Negative Limitations
                        Contradict the Specification of the Patents-In-Suit ................... 7

                iii.    The Specification's General Description of Matrix Polymers
                        Before, During, and After the Dosage Form Is Administered
                        to a Patient Has No Bearing on the Definition of the
                        Disputed Claim Language............................................................ 8

        B.      "release promoting agent comprising a polymer having pH-
                dependent solubility selected from the group consisting of . . ."......... 10

V.      CONCLUSION................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ................................................................................ 7

*CIAS, Inc. v. All. Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007) .............................................................................. 2

*Genentech, Inc. v. Chiron Corp.*,
112 F.3d 495 (Fed. Cir. 1997) ................................................................................ 6

*HZNP Meds. LLC v. Actavis Lab'ys UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ................................................................................ 7

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) ............................................................................... 12

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998) .............................................................................. 9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ......................................................................... 11, 12

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ................................................................................................ 4

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .................................................................................. 4

*Mars, Inc. v. H.J. Heinz Co., L.P.*,
377 F.3d 1369 (Fed. Cir. 2004) .............................................................................. 6

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
No. 2021-1070, 2022 U.S. App. LEXIS 17021 (Fed. Cir. June 21, 2022) ............ 8

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) .............................................................................. 8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .............................................................................. 4

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
400 F.3d 901 (Fed. Cir. 2005) ................................................................................ 6

*SanDisk Corp. v. Kingston Tech. Co.*,
695 F.3d 1348 (Fed. Cir. 2012) ....................................................................... 11, 12

*Supernus Pharms. Inc. v. Actavis Inc.*,
665 F. App'x 901 (Fed. Cir. 2016) ...................................................................... 3, 9

*Supernus Pharms. Inc. v. Actavis Inc.*,
No. 13-4740 (RMB/JS), 2016 U.S. Dist. LEXIS 14111 (D.N.J. Feb. 5, 2016)...................... 3, 5, 9

*Supernus Pharms., Inc. v. TWi Pharms., Inc.*,
265 F. Supp. 3d 490 (D.N.J. 2017) ...................................................................... 9

*Supernus Pharms., Inc. v. TWi Pharms., Inc.*,
747 F. App'x 852 (Fed. Cir. 2018) ...................................................................... 9

*Swivel Rental & Supply v. Pull*,
No. 6:18-01141, 2020 U.S. Dist. LEXIS 48953 (W.D. La. Mar. 20, 2020)................................ 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)........................................................................... 4

*Varco, L.P. v. Parson Sys. USA Corp.*,
436 F.3d 1368 (Fed. Cir. 2006)........................................................................... 9

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)............................................................................ 4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997).......................................................................................... 6

## Other Authorities

MPEP (8th ed. Rev. 1 § 2111.03, Feb. 2003) ............................................................... 6

## GLOSSARY

| | |
|---|---|
| Supernus | Plaintiff Supernus Pharmaceuticals, Inc. |
| Ricon | Defendants RiconPharma LLC and Ingenus Pharmaceuticals, Inc. |
| the '898 patent | U.S. Patent No. 7,722,898 |
| the '131 patent | U.S. Patent No. 7,910,131 |
| the '600 patent | U.S. Patent No. 8,617,600 |
| the '930 patent | U.S. Patent No. 8,821,930 |
| the '791 patent | U.S. Patent No. 9,119,791 |
| the '975 patent | U.S. Patent No. 9,351,975 |
| the '525 patent | U.S. Patent No. 9,370,525 |
| the '278 patent | U.S. Patent No. 9,855,278 |
| the '042 patent | U.S. Patent No. 10,220,042 |
| patents-in-suit | The '898 patent, the '131 patent, the '600 patent, the '930 patent, the '791 patent, the '975 patent, the '525 patent, the '278 patent, and the '042 patent, collectively. |

## DISPUTED TERMS AND COMPETING CONSTRUCTIONS

| Claim Term/Phrase (*Patents/Claims*) | Supernus's Construction | Ricon's Construction |
|---|---|---|
| **"A pharmaceutical formulation … comprising a homogeneous matrix comprising"**<br><br>*'898 patent, claim 1*<br>*'131 patent, claim 1*<br>*'600 patent, claim 1*<br>*'930 patent, claim 1*<br>*'791 patent, claim 1*<br>*'975 patent, claim 1*<br>*'525 patent, claim 1*<br>*'278 patent, claim 1*<br>*'042 patent, claim 1* | Requires no construction – plain and ordinary meaning, i.e., "A pharmaceutical formulation … comprising a matrix in which the ingredients or constituents are uniformly dispersed comprising" | A pharmaceutical formulation in which the ingredients are uniformly dispersed throughout the entire dosage form and has a structure that maintains its shape during drug release and serves as a carrier for the ingredients."  In the context of the Patents-In-Suit, "homogeneous matrix" excludes multi-layer tablets having different ingredients and/or different proportions of ingredients in different layers of the tablet. |

vi

| Claim Term/Phrase (*Patents/Claims*) | Supernus's Construction | Ricon's Construction |
|---|---|---|
| **"release promoting agent comprising a polymer having pH-dependent solubility selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers"**<br><br>*'898 patent, claim 1*<br>*'131 patent, claim 1*<br>*'600 patent, claim 1*<br>*'930 patent, claim 1*<br>*'791 patent, claim 1*<br>*'975 patent, claim 1*<br>*'525 patent, claim 1*<br>*'278 patent, claim 1*<br>*'042 patent, claim 1* | Requires no construction - plain and ordinary meaning, i.e., "An agent that functions to enhance the release rate of the oxcarbazepine comprising a polymer having pH-dependent solubility selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers" | "a release promoting agent comprising a polymer selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers, which remains insoluble until it reaches a particular pH value higher than 4.0, at which point it dissolves, enhancing the release rate of the oxcarbazepine."<br><br>The transitional phrase "consisting of" in the context of the Patents-In-Suit excludes polymers other than the 10 species identified in the claimed group. |

## I.    INTRODUCTION

Supernus respectfully submits this brief in support of its proposed constructions of the disputed claim language identified in the parties' Joint Claim Construction and Prehearing Statement.[1]

Supernus proposes meaningful and technically accurate definitions of the disputed terms that:

1.    comport with their customary/ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention ("a POSA");

2.    are consistent with all aspects of the claims, specifications, and prosecution histories of the patents-in-suit; and

3.    importantly, track the definitions ordered by The Honorable Renee Marie Bumb, U.S.D.J. in prior cases involving the same language from the same patents.

Ricon, on the other hand, brazenly urges this Court to depart from its own earlier rulings and import extraneous words and phrases from the specifications to drastically narrow the scope of Supernus's patents in an attempt to avoid liability for what is otherwise a straightforward case of patent infringement.

One particularly flagrant example is Ricon's insistence that the definition of "homogeneous matrix" specifically "exclude multi-layer tablets." For context, the claims of the patents-in-suit are generally directed to:

> A pharmaceutical formulation for once-a-day administration of oxcarbazepine **comprising** a homogeneous matrix **comprising**: [Ingredient A]; [Ingredient B]; [Ingredient C]; and [Ingredient D].

The parties agree that "a homogeneous matrix" is "a matrix in which the ingredients or constituents are uniformly dispersed." Ricon's proposed construction, however, further requires that the "homogeneous matrix" exist "throughout the entire dosage form" such that it "excludes

---

[1] ECF No. 63.

1

multi-layer tablets having different ingredients and/or different proportions of ingredients in different layers of the tablet."

"'[C]omprising' is well understood to mean 'including but not limited to.'" *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). Here, the "comprising" that precedes "homogeneous matrix" describes a formulation that must include "a homogeneous matrix" that contains Ingredients A-D (or their equivalents), **but may also include additional layers, constituents, components, or structures**. The patentees' use of the word "comprising" before "homogeneous matrix" renders Ricon's proposed construction—which expressly excludes additional layers—incorrect as a matter of law.[2]

This is but one example of Ricon twisting (or outright ignoring) black-letter claim construction principles to avoid a finding that its accused ANDA Product infringes Supernus's patents. With the foregoing in mind, Supernus respectfully requests that the Court adopt its proposed constructions and reject Ricon's.

## II.   BACKGROUND

Supernus developed Oxtellar XR®, the first and only antiepileptic drug that provides once-a-day, controlled delivery of oxcarbazepine to treat partial-onset seizures.

Individuals who suffer from partial-onset seizures remain awake and aware, but experience uncontrolled movements, odd sensations, momentary confusion and, in some cases, a brief loss of consciousness. Anybody can experience a seizure, although they are more likely in people who have epilepsy or have suffered a head injury, brain infection, stroke, or brain tumor.

---

[2] It bears noting that Ricon characterizes its accused ANDA Product as a "multi-layer tablet," so its motivation for disregarding this well-established claim construction principle is obvious.

This is the not the first case in which these patents have been litigated.  Judge Bumb has already determined "that others had previously failed to develop an effective once daily oxcarbazepine formulation."  *Supernus Pharms. Inc. v. Actavis Inc.*, No. 13-4740 (RMB/JS), 2016 U.S. Dist. LEXIS 14111, at *127 (D.N.J. Feb. 5, 2016), *aff'd*, 665 F. App'x 901 (Fed. Cir. 2016).  In other words, Supernus succeeded where others did not by recognizing that "[o]xcarbazepine and its derivatives . . . are poorly soluble in water," and that "[d]ue to their poor solubility, their release from a sustained release dosage form is rather incomplete," resulting in "reduced bioavailability of the drug making the dosage form ineffective in providing a therapeutically effective concentration in the body."[3]

Supernus addressed this "serious challenge"[4] by developing "enhanced formulations" that "incorporate[e] solubility enhancers and/or release-promoting excipients."[5]  Supernus's "enhanced formulations" were tested and "surprisingly found to provide significant increase in bioavailability of oxcarbazepine compared to formulations containing no solubility/release enhancing excipients."[6]

The patents-in-suit claim pharmaceutical formulations that utilize a combination of: (i) a matrix-forming polymer; (ii) a solubility enhancer to increase the solubility of oxcarbazepine, which is poorly soluble in water; and (iii) a pH-dependent polymer that rapidly dissolves out of the tablet, leaving behind pores and channels that facilitate the ingress of water into the tablet (and thus increase the efficiency of the solubility enhancers).  An embodiment of the patents-in-suit is Oxtellar XR®, the first and only once-a-day formulation of oxcarbazepine.

---

[3] Ex. 1, '898 Patent, col. 1, ll. 41-53.

[4] Ex. 1, '898 Patent, col. 1, ll. 51-53.

[5] Ex. 1, '898 Patent, col. 4, ll. 1-4.

[6] Ex. 1, '898 Patent, col. 4, ll. 4-8.

### III.   GENERAL CLAIM CONSTRUCTION PRINCIPLES

Claim terms "are generally given their ordinary and customary meaning," i.e., the meaning that they "would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (citations omitted). Ordinary meaning may be derived from "a variety of sources," both intrinsic and extrinsic to the patents-in-suit. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324–25 (Fed. Cir. 2002).

The Court must first "look to the words of the claims themselves . . . to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The words of the claims, however, "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). While the specification (also known as the "written description") provides context for the claims, "reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law." *Phillips*, 415 F.3d at 1320. Additionally, courts may consider "the complete record of the proceedings before the PTO"—i.e., the prosecution history—to elucidate the meaning of a disputed claim term. *Id.* at 1317.

4

## IV.    LEGAL ANALYSIS

### A.    "A pharmaceutical formulation … comprising a homogeneous matrix comprising"

| Claim Term/Phrase (*Patents/Claims*) | Supernus's Construction | Ricon's Construction |
|---|---|---|
| "A pharmaceutical formulation … comprising a homogeneous matrix comprising"<br><br>*'898 patent, claim 1*<br>*'131 patent, claim 1*<br>*'600 patent, claim 1*<br>*'930 patent, claim 1*<br>*'791 patent, claim 1*<br>*'975 patent, claim 1*<br>*'525 patent, claim 1*<br>*'278 patent, claim 1*<br>*'042 patent, claim 1* | Requires no construction – plain and ordinary meaning, i.e., "A pharmaceutical formulation … comprising a matrix in which the ingredients or constituents are uniformly dispersed comprising" | A pharmaceutical formulation in which the ingredients are uniformly dispersed throughout the entire dosage form and has a structure that maintains its shape during drug release and serves as a carrier for the ingredients." In the context of the Patents-In-Suit, "homogeneous matrix" excludes multi-layer tablets having different ingredients and/or different proportions of ingredients in different layers of the tablet. |

The claims of the patents-in-suit are generally directed to "[a] pharmaceutical formulation **comprising a homogeneous matrix comprising**": (a) oxcarbazepine; (b) a matrix-forming polymer; (c) an agent that enhances the solubility of oxcarbazepine; and (d) a release promoting agent.

Judge Bumb construed "homogenous matrix" to mean "a matrix in which the ingredients or constituents are uniformly dispersed." *Actavis*, 2016 U.S. Dist. LEXIS 14111, at *16. Supernus respectfully contends that this Court should adopt Judge Bumb's construction.

Ricon apparently agrees that a "homogenous matrix" is a structure "in which the ingredients are uniformly dispersed," but then departs from the plain language of the claims by: (i) ignoring both instances of the term "comprising;" and (ii)  importing limitations from the specification into the claims.

5

      **i.**        **The Claims Themselves Use the Term of Art "Comprising" to Describe Formulations that Must Have at Least One Homogeneous Matrix, But May Also Include Other Layers, Constituents, Components, or Structures**

"[T]he transitional term 'comprising' . . . is open-ended and does not exclude additional, unrecited elements or method steps." *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004) (quoting MPEP (8th ed. Rev. 1 § 2111.03, Feb. 2003)); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.") (citations omitted).

Accordingly, the claimed pharmaceutical formulations must include "a homogenous matrix," but do not exclude additional, unrecited layers, constituents, components, or structures.

Ricon argues that the "entire dosage form" must be nothing more than a single homogenous matrix, i.e., that it must have no layers, constituents, components, or structures other than the "homogeneous matrix." Ricon also argues that the "'homogeneous matrix' excludes multi-layer tablets having different ingredients and/or different proportions of ingredients in different layers of the tablet." These baseless additions to the plain and ordinary meaning of the "homogenous matrix" claim limitation yield two equally absurd results.

*First*, a definition that excludes layers other than the "homogeneous matrix" effectively deletes the word "comprising" from every claim of the patents-in-suit. Courts routinely reject attempts to ignore or read out express claim language because "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005) (rejecting a claim construction that "reads out the essence of the claim limitation"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir.

6

2006) (reading limitations out of the claim would "be contrary to the principle that claim language should not [be] treated as meaningless"); *HZNP Meds. LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 692 (Fed. Cir. 2019) (same).

*Second*, construing the word "comprising" as closed, exclusive, or limited—as opposed to open-ended—would contradict its universally accepted meaning. *See Swivel Rental & Supply v. Pull*, No. 6:18-01141, 2020 U.S. Dist. LEXIS 48953, at *21 (W.D. La. Mar. 20, 2020) (noting that the "commonly used 'comprising' format" is "universally recognized to thereby include the recited elements as an open 'including but not limited to' set").

The Court should adopt Supernus's proposed construction of the "homogeneous matrix" limitation because it accounts for the patentees' deliberate use of the term of art "comprising."

> ii.     **Ricon's Proposed Exclusions and Negative Limitations Contradict the Specification of the Patents-In-Suit**

Supernus's construction squares with the specification of the patents-in-suit, which states that the claimed invention, among other things, "**pertains to multi-layer tablets**."[7]

Ricon's construction excluding "multi-layer tablets" and requiring a "formulation in which the ingredients are uniformly dispersed throughout the entire dosage form" directly contradicts multiple express disclosures in the patent specification:

| | |
|---|---|
| "This invention also pertains to multi-layer tablets. Multilayer tablets can be prepared with each layer releasing the drug at a rate that is different from the rate of release from another layer.  In multi-layer tablets, each layer may or may not be coated." | Ex. 1, '898 Patent, col. 2, ll. 44-48. |
| "Alternatively, multiple modified release units may be formed into [] multi-layer tablets.  Multi-layer tablets can be prepared with each layer releasing the active compound at a rate that is different from the rate of release of the active ingredient from another layer.  In multi-layer tablets, each layer may optionally be coated with controlled-release polymer(s)." | Ex. 1, '898 Patent, col. 6, ll. 37-43. |

---

[7] Ex.1, '898 Patent, col. 2, ll. 44-48; col. 6, ll. 37-41; *see also id.* col. 7, l. 43-col. 8, l. 36.

Negative limitations like those proposed by Ricon—e.g., "'homogeneous matrix' excludes multi-layer tablets"—must have a firm basis in the patent specification. The Federal Circuit requires that there "be something in the specification that conveys to a skilled artisan that the inventor intended the exclusion, such as a discussion of disadvantages or alternatives." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, No. 2021-1070, 2022 U.S. App. LEXIS 17021, at *5 (Fed. Cir. June 21, 2022); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322–23 (Fed. Cir. 2003) (declining to adopt a negative limitation unsupported by the intrinsic record). The specification of the patents-in-suit contains no discussion or disclosure that supports Ricon's negative limitations. On the contrary, the table above demonstrates that the specification specifically contemplates multilayer tablets. For that reason alone, Ricon's construction must be rejected.

### iii.    The Specification's General Description of Matrix Polymers Before, During, and After the Dosage Form Is Administered to a Patient Has No Bearing on the Definition of the Disputed Claim Language

Ricon's proposed definition also tacks on a requirement that the claimed pharmaceutical formulations have "a structure that maintains its shape during drug release and serves as a carrier for the ingredients." Ricon imported this language from the following passage in the specification of the patents-in-suit:

> The desired drug release pattern contemplated by this invention is achieved by using "matrix" polymers that hydrate and swell in aqueous media, such as biological fluids. As these polymers swell, they form a homogenous matrix structure that maintains its shape during drug release and serves as a carrier for the drug, solubility enhancers and/or release promoters.[8]

It is not entirely clear why Ricon believes this truncated specification excerpt is necessary to define the disputed claim language. Regardless, Judge Bumb carefully analyzed this

---

[8] Ex.1, '898 Patent, col. 5, ll. 53-59.

paragraph in two prior decisions that were both affirmed by the Federal Circuit. *Actavis*, 2016 U.S. Dist. LEXIS 14111, *aff'd*, 665 F. App'x 901 (Fed. Cir. 2016); *Supernus Pharms., Inc. v. TWi Pharms., Inc.*, 265 F. Supp. 3d 490 (D.N.J. 2017), *aff'd*, 747 F. App'x 852 (Fed. Cir. 2018). In the *TWi* decision, Judge Bumb noted that the language imported here by Ricon "explicitly discuss[es] processes affecting the dosage unit **after administration**," but also "that a person of ordinary skill in the art reading [that language] would understand that the inventors were in possession of a homogeneous matrix, as construed by this Court, **prior to hydration or administration**." *TWi Pharms.*, 265 F. Supp. 3d at 521 (emphasis added).

In short, the portion of Ricon's proposed construction referring to "a structure that maintains its shape during drug release and serves as a carrier for the ingredients" merely describes certain matrix polymers before, during, and after the dosage form is administered to a patient. This description may be relevant to achieving a "desired drug release pattern," but it does not define the phrase at issue here, i.e., "A pharmaceutical formulation … comprising a homogeneous matrix comprising." *See Varco, L.P. v. Parson Sys. USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims.") (citations omitted); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[I]t is the claims, not the written description, which define the scope of the patent right.") (emphasis in original).

9

B.    **"release promoting agent comprising a polymer having pH-dependent solubility selected from the group consisting of . . ."**

| Claim Term/Phrase (*Patents/Claims*) | Supernus's Construction | Ricon's Construction |
|---|---|---|
| **"release promoting agent comprising a polymer having pH-dependent solubility selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers"** <br><br> *'898 patent, claim 1* <br> *'131 patent, claim 1* <br> *'600 patent, claim 1* <br> *'930 patent, claim 1* <br> *'791 patent, claim 1* <br> *'975 patent, claim 1* <br> *'525 patent, claim 1* <br> *'278 patent, claim 1* <br> *'042 patent, claim 1* | Requires no construction - plain and ordinary meaning, i.e., "An agent that functions to enhance the release rate of the oxcarbazepine comprising a polymer having pH-dependent solubility selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers" | "a release promoting agent comprising a polymer selected from the group consisting of cellulose acetate phthalate, cellulose acetate succinate, methylcellulose phthalate, ethylhydroxycellulose phthalate, polyvinylacetate phthalate, polyvinylbutyrate acetate, vinyl acetate-maleic anhydride copolymer, styrene-maleic mono-ester copolymer, and Eudragit L100-55 (Methacrylic Acid-Ethyl Acrylate Copolymer (1:1)), and methyl acrylate-methacrylic acid copolymers, which remains insoluble until it reaches a particular pH value higher than 4.0, at which point it dissolves, enhancing the release rate of the oxcarbazepine." <br><br> The transitional phrase "consisting of" in the context of the Patents-In-Suit excludes polymers other than the 10 species identified in the claimed group. |

The parties agree on several aspects of the definition for this phrase. They agree that a "release promoting agent" is an agent that enhances the release rate of the oxcarbazepine in the claimed formulations. They also generally agree that the release promoting agent is "selected from the group consisting of" ten recited chemical categories.

10

The parties' actual dispute (as Supernus presently understands it) centers on what constitutes a "polymer having pH-dependent solubility."  Supernus contends that the meaning of "polymer having pH-dependent solubility" is plain on its face to a POSA and requires no further construction.  Ricon, on the other hand, would again have this Court import one specific example from the specification to define a "polymer having pH-dependent solubility" as a polymer "which remains insoluble until it reaches a particular pH value higher than 4.0."

The specification states that "pH dependent polymers"—"also known as enteric polymers"—"dissolve at pH values higher than **about** 4.0, while remaining insoluble at pH values lower than 4.0."[9]  Ricon twists the specification's broad general description of an enteric polymer into a narrow, rigid definition that would require the claimed polymer to "remain[] insoluble until it reaches a particular pH value higher than 4.0, at which point it dissolves."

Ricon's proposed construction also violates the well-established doctrine of claim differentiation, which forbids reading into an independent claim a limitation that is explicitly set forth in a separate dependent claim.  *See, e.g.*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004); *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012).

---

[9] Ex. 1, '898 Patent, col. 4, ll. 16-21 (emphasis added).

Claims 1 and 17 of the '898 patent illustrate the flaw in Ricon's proposed construction:

| '898 Patent Independent Claim 1 | Independent Claim 1 According to Ricon's Proposed Construction | '898 Patent Dependent Claim 17 |
|---|---|---|
| 1. A pharmaceutical formulation . . . comprising . . . (d) at least one release promoting agent comprising a polymer having pH-dependent solubility . . . . | 1. A pharmaceutical formulation . . . comprising (d) at least one release promoting agent comprising a polymer [**that remains insoluble until it reaches a particular pH value higher than 4.0, at which point it dissolves**] . . . . | The pharmaceutical formulation of claim 1, wherein the polymer having pH-dependent solubility remains intact at pH values of below 4 and dissolves at pH values of more than 4. |
|  | **SAME SCOPE = NO CLAIM DIFFERENTIATION[10]** |  |

Here, the doctrine of claim differentiation "is at its strongest" because the language that Ricon seeks to read into Claim 1 appears as a limitation in the dependent claims. *Liebel-Flarsheim*, 358 F.3d at 910; *see also SanDisk Corp.*, 695 F.3d at 1361 (finding the doctrine of claim differentiation prohibited reading a limitation into an independent claim "[w]here, as here, the sole difference between the independent claim and the dependent claims is the limitation that one party is trying to read into the independent claim . . . .").[11]

---

[10] Ricon's proposed construction violates the doctrine of claim differentiation for all of the patents-in-suit. *See* Ex. 2, '131 Patent, Claim 17; Ex. 3, '600 Patent, Claim 17; Ex. 4, '930 Patent, Claim 6; Ex. 5, '791 Patent, Claim 6; Ex. 6, '975 Patent, Claim 6; Ex. 7, '525 Patent, Claim 7; Ex. 8, '278 Patent, Claim 7; Ex. 9, '042 Patent, Claim 9.

[11] Relatedly, Ricon's proposed construction would render Claim 17 of the '898 patent—and similar dependent claims from the other patents-in-suit—entirely superfluous. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 809-10 (Fed. Cir. 2021) (reaffirming "an important principle of interpretation, for patent claims as for statutes: It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.") (quotation omitted).

## V.    CONCLUSION

For the foregoing reasons, Supernus respectfully requests that the Court adopt its proposed constructions of the disputed claim terms.


Dated: June 30, 2022                    Respectfully submitted,

                                        By: s/ William C. Baton
                                            Charles M. Lizza
                                            William C. Baton
                                            Sarah A. Sullivan
                                            SAUL EWING ARNSTEIN & LEHR LLP
                                            One Riverfront Plaza
                                            1037 Raymond Blvd., Suite 1520
                                            Newark, New Jersey 07102-5426
                                            wbaton@saul.com

                                            Edgar H. Haug
                                            Nicholas F. Giove
                                            Jason A. Kanter
                                            Camille Y. Turner
                                            Anna N. Lukacher
                                            HAUG PARTNERS LLP
                                            745 Fifth Avenue
                                            New York, New York 10151
                                            ehaug@haugpartners.com
                                            ngiove@haugpartners.com
                                            jkanter@haugpartners.com
                                            cturner@haugpartners.com
                                            alukacher@haugpartners.com

                                            *Attorneys for Plaintiff*
                                            *Supernus Pharmaceuticals, Inc.*

13